NO. 23-1655

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

MARTIN A. JONES,

Petitioner-Appellant,

v.

JEFFEREY PERKINS,

Respondent-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

No. 3:22-cv-05371-BJR
The Honorable Barbara J. Rothstein
United States District Judge

## BRIEF OF RESPONDENT-APPELLEE

ROBERT W. FERGUSON
Attorney General

JOHN J. SAMSON, WSBA #22187
Assistant Attorney General
P.O. Box 40116
Olympia, WA 98504-0116
(360) 586-1445
John.Samson@atg.wa.gov

# TABLE OF CONTENTS

I.   STATEMENT OF JURISDICTION ...................................................1

II.  STATEMENT OF ISSUE .................................................................1

III. STATEMENT OF THE CASE ...........................................................1

  A. The State Court Convicted Jones of Attempted Murder in the
     First Degree for Shooting Trooper Johnson in the Head .............1

     1. The Facts of the Shooting .....................................................1

     2. Trooper Johnson's Identification of Jones............................4

     3. The Trial Judge Applied the *Brathwaite* Factors in Ruling on
        the Motion to Suppress the Identification Evidence..............4

  B. The Washington Court of Appeals Affirmed the Conviction,
     Ruling that the Identification Evidence Was Sufficiently
     Reliable for Admission at Trial ..................................................8

  C. The District Court Denied Habeas Relief Because Jones Did Not
     Show the State Court Adjudication of the Claim was
     Unreasonable ...............................................................................9

IV.  STANDARD OF REVIEW ...............................................................11

V.   SUMMARY OF THE ARGUMENT ................................................11

VI.  ARGUMENT .....................................................................................13

  A. 28 U.S.C. § 2254(d) Bars Relief Because the State Court
     Adjudication Was Not an Unreasonable Application of Clearly
     Established Federal law, or Based upon an Unreasonable
     Determination of the Facts .........................................................13

i

B.  The State Court Reasonably Applied Clearly Established Federal Law When It Concluded that the Identification Evidence was Sufficiently Reliable to Admit at Trial ........................................ 17

    1.  Identification Evidence Must Present a Substantial Likelihood of Irreparable Misidentification to Violate Due Process ................................................................................ 18

    2.  The State Court Reasonably Determined that the Identification Process, Albeit Suggestive, Was Sufficiently Reliable to Submit the Evidence to the Jury ....................... 19

    3.  Jones Does Not Show the State Court Unreasonably Applied Clearly Established Federal Law .......................................... 21

C.  Jones Does Not Show the State Court Adjudication Rested on an Unreasonable Determination of the Facts ................................ 29

VII.  CONCLUSION ................................................................................ 33

VIII. CERTIFICATE OF COMPLIANCE FOR BRIEFS ........................ 34

# TABLE OF AUTHORITIES

## Cases

*Bradshaw v. Richey*,
    546 U.S. 74 (2005) ...................................................................... 11

*Brown v. Payton*,
    544 U.S. 133 (2005) .................................................................... 17

*Dows v. Wood*,
    211 F.3d 480 (9th Cir. 2000) ...................................................... 11

*Early v. Packer*,
    537 U.S. 3 (2002) ........................................................................ 22

*Greene v. Fisher*,
    565 U.S. 34 (2011) ...................................................................... 15

*Harrington v. Richter*,
    562 U.S. 86 (2011) ............................................................... passim

*Hendricks v. Calderon*,
    70 F.3d 1032 (9th Cir. 1995) ...................................................... 11

*Holland v. Jackson*,
    542 U.S. 649 (2004) .............................................................. 15, 23

*Johnson v. Williams*,
    568 U.S. 289 (2013) .............................................................. 22, 23

*Kuhlmann v. Wilson*,
    477 U.S. 436 (1986) .................................................................... 14

*Lockyer v. Andrade*,
    538 U.S. 63 (2003) ...................................................................... 16

*Manson v. Brathwaite*,
    432 U.S. 98 (1977) .............................................................. 6, 19, 24

*Miller v. Fenton*,
474 U.S. 104 (1985) ...................................................................... 14

*Neil v. Biggers*,
409 U.S. 188 (1972) ................................................................ 19, 24

*Perry v. New Hampshire*,
565 U.S. 228 (2012). .................................................................... 18

*Schriro v. Landrigan*,
550 U.S. 465 (2007) ...................................................................... 16

*State v. Jones*,
185 Wn.2d 412, 372 P.3d 755 (2016) ............................................ 9

*Uttecht v. Brown*,
551 U.S. 1 (2007) .......................................................................... 13

*Waddington v. Sarausad*,
555 U.S. 179 (2009) ................................................................ 13, 15

*Wainwright v. Sykes*,
433 U.S. 72 (1977) ........................................................................ 14

*Williams v. Taylor*,
529 U.S. 362 (2000) ............................................ 13, 14, 15, 16

*Woodford v. Garceau*,
538 U.S. 202 (2003) ................................................................ 13, 15

*Woodford v. Visciotti*,
537 U.S. 19 (2002) ........................................................................ 17

*Yarborough v. Alvarado*,
541 U.S. 652 (2004) ...................................................................... 16

<u>Statutes</u>

28 U.S.C. § 2254 ................................................................................ 15

iv

28 U.S.C. § 2254(d) ................................................................ passim

28 U.S.C. § 2254(d)(1) ................................................................ 13

28 U.S.C. § 2254(e)(1) ................................................................ 11

TABLE OF AUTHORITIES

# I.    STATEMENT OF JURISDICTION

Respondent-Appellee (the State) accepts Jones's statement of jurisdiction.

# II.    STATEMENT OF ISSUE

1.    Whether 28 U.S.C. § 2254(d) bars habeas corpus relief because the state court adjudication of the identification claim was neither an unreasonable application of clearly established federal law, nor based upon an unreasonable determination of the facts.

2.    Whether the state court reasonably rejected the claim because the identification evidence was sufficiently reliable to admit at trial, and the jury could properly consider what weight to give the evidence.

# III.    STATEMENT OF THE CASE

## A.    The State Court Convicted Jones of Attempted Murder in the First Degree for Shooting Trooper Johnson in the Head

### 1.    The Facts of the Shooting

Jones is in custody for his conviction for attempted murder. 2-ER-78-88. The state court convicted Jones of attempting to murder Trooper Johnson of the Washington State Patrol by shooting him in the head. *See* 1-ER-44-47. Jones shot Trooper Johnson after another State Patrol Trooper had arrested Jones's wife for driving under the influence. *See* 1-ER-44-47. The shooting occurred on the early morning of February 13, 2010. 1-ER-44; 2-ER-89.

1

Trooper Greene had pulled over a minivan driven by Susan Jones, Jones's wife. 1-ER-44; 2-ER-89. Suspecting that Ms. Jones was intoxicated, Trooper Greene conducted field sobriety tests. 1-ER-44. Meanwhile, Trooper Johnson arrived at the scene to backup Troop Greene. 1-ER-44. Based upon the field sobriety tests, Trooper Greene arrested Ms. Jones for driving under the influence. 1-ER-44. Shortly after her arrest, Ms. Jones texted her husband, Mr. Jones, and informed him of her arrest. 1-ER-44.

While Trooper Greene transported Ms. Jones to the local police station, Trooper Johnson began processing the contents of Ms. Jones's minivan prior to towing. 1-ER-44. George Hill arrived to tow the vehicle. 1-ER-44. As Hill and Trooper Johnson continued preparing the minivan for towing, Trooper Johnson noticed a visibly agitated white male approach and ask Hill what he was doing. 1-ER-44; 2-ER-89. Hill told the man that he was preparing the vehicle for towing, and as the man began walking away, Trooper Johnson asked the man if he needed help. 1-ER-44; 2-ER-89-90. The man, visibly angry, said no and continued to walk away. 1-ER-44; 2-ER-89-90. Shortly thereafter, while continuing to process the minivan for towing, Hill saw the man approach Trooper Johnson from behind 1-ER-44; 2-ER-90. The man then grabbed Trooper Johnson and shot him in the back of the head. 1-ER-45; 2-ER-90.

Trooper Johnson, still conscious, made eye contact with the man who had shot him and returned fire at the man. 1-ER-45; 2-ER-90. Hill tried to chase the man as he fled, but the man then shot at Hill. 1-ER-45; 2-ER-90. Hill returned to assist Trooper Johnson, and they reported the shooting to the Washington State Patrol dispatcher, who notified the local police. 1-ER-45; 2-ER-90. A responding police officer transported Trooper Johnson to a local hospital, where a physician initiated treatment and arranged to transfer Trooper Johnson to a larger hospital. 1-ER-45; 2-ER-90.

At the scene of the shooting, investigating officers found one .22 caliber short cartridge casing at the location where the man had shot Trooper Johnson. 1-ER-45. The cartridge had the logo for Cascade Cartridge, Inc., an ammunition manufacturer, stamped on it. 1-ER-45. Police employed two K-9 units to track the scent from the shooting scene, and one of K-9 units led to the block on which Jones resided. 1-ER-45. When the police realized that the dog was approaching Jones's home, officers surrounded the home. 1-ER-45. Jones then existed the home, walking toward the beach. 1-ER-45. The officers followed Jones and detained him at gunpoint. 1-ER-45. Jones claimed he had been sleeping all night and was simply going for a morning walk. 1-ER-45. After talking with Jones, the police released him. 1-ER-45.

### 2.    Trooper Johnson's Identification of Jones

While in the hospital, Trooper Johnson reviewed several photomontages and individual photographs, none of which contained a photo of Jones, and he did not identify the shooter. 1-ER-45; 2-ER-90-93. Trooper Johnson repeatedly asked to see a photograph of Ms. Jones's husband, and when eventually showed the photo, he identified Jones as the shooter. 1-ER-45.

As a result of Trooper Johnson's identification, the police arrested Jones. 1-ER-46. Jones continued to claim he had been sleeping at the time of the shooting. 1-ER-46. However, phone records obtained as a result of a search warrant showed that Jones had made several phone calls in the early morning hours of February 13, 2010. 1-ER-46. The police also searched Jones's home, and officers found a box of .22 caliber Cascade Cartridge, Inc. ammunition, manufactured in 1999, which matched the .22 shell casing found at the scene of the shooting. 1-ER-46.

### 3.    The Trial Judge Applied the *Brathwaite* Factors in Ruling on the Motion to Suppress the Identification Evidence

The prosecution charged Jones with attempted murder. 1-ER-46. Prior to trial, Jones moved to suppress the evidence of Trooper Johnson's identification of him, or alternatively to present expert testimony regarding the questionable reliability of eyewitness identifications. 1-ER-46.

4

The judge considered stipulated facts when hearing the motion to suppress. 2-ER-89-93; *see also* 2-ER-99-100. The stipulated facts showed that it was dark at the time of the shooting, but street lamps and lights from the vehicles illuminated the area. 2-ER-89. The facts also showed that immediately after the shooting, Trooper Johnson was alert and told responding police officers "I got a good look at him." 2-ER-90. Trooper Johnson said the man who shot him was the same man who had approached them earlier. 2-ER-89-90. Trooper Johnson said "that he 'saw him and would be able to recognize him.'" 2-ER-90. Hill also said the man who shot Trooper Johnson was the same man who had earlier approached them. 2-ER-89-90.

Jones was 5' 10", white, and 45 years of age at the time. 2-ER-90. Soon after the shooting, Trooper Johnson described the shooter as white, approximately 5' 10" to 5' 11", and approximately 40 years of age. 2-ER-90. Trooper Johnson said he "would be able to recognize him." 2-ER-90. Trooper Johnson "paid 'diligent attention' to the shooter, prior to the shooting, because [the man] was so angry that the vehicle was being impounded." 2-ER-91. When shown a photograph of Jones, Trooper Johnson positively identified him as the shooter. 2-ER-92. When later shown a photomontage that included a photograph of Jones, Trooper Johnson again positively identified Jones. 2-ER-93.

The judge heard oral argument from the prosecutor and defense counsel. 1-ER-46; 2-ER-99-123. Defense counsel stressed Trooper Johnson's conflicting statements that indicated he actually did not get a good look at the shooter, that he was predisposed to believing Jones had shot him, and that the police showed him a single photograph of Jones containing Jones's name. 2-ER-101-04. Defense counsel argued that these facts showed a tainted identification process that required suppression of the evidence. 2-ER-104-108.

In response, the prosecutor specifically cited to *Manson v. Brathwaite*, 432 U.S. 98 (1977), and argued "that when you have a suggestive identification procedure . . . such evidence is for the jury to weigh." 2-ER-110-111. The prosecutor argued that "the standard for a due process violation is that the Court must find a substantial likelihood of irreparable misidentification because of the procedure that was used." 2-ER-118. The prosecution added, "the seminal case of *Manson v. Braithwaite* [sic] sets forth a five part test for the Court to use to kind of determine whether there is a substantial likelihood of irreparable misidentification. . . ." 2-ER-118. The prosecutor then expressly argued those five factors "are the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated in the

confrontation, and the time between the crime and the confrontation." 2-ER-118. The prosecutor argued that even though the case involved "admittedly a suggestive procedure . . . there is no substantial likelihood of irreparable misidentification" requiring exclusion of the evidence. 2-ER-121. The prosecutor concluded by arguing that the five *Brathwaite* factors were satisfied, "and the defects in this case with the suggestive identification procedure, those goes [sic] to the weight and not the admissibility of this evidence." 2-ER-121.

The judge denied the motion to suppress the identification evidence, but allowed the defense expert to testify regarding the reliability of eyewitness identifications. 1-ER-46; 2-ER-122-123. The judge ruled, "I do not find the due process violation. The procedures that were employed do not create the substantial likelihood of an irreparable misidentification." 2-ER-122. The judge specifically indicated that she was basing her ruling on the five *Brathwaite* factors, including Trooper Johnson's opportunity to view the suspect, his degree of attention, the accuracy of his description prior to viewing the photograph, the level of certainty demonstrated at the identification, and the time between the crime and the identification. 2-ER-122-123. The judge found "that the identification was independent, reliable and the substantial likelihood of irreparable misidentification is not present." 2-ER-123.

**B.    The Washington Court of Appeals Affirmed the Conviction, Ruling that the Identification Evidence Was Sufficiently Reliable for Admission at Trial**

Jones appealed from his conviction to the Washington Court of Appeals, raising among other issues his current claim. The Washington Court of Appeals issued an opinion, *see* 1-ER-43-76, which specifically rejected Jones's claim that the identification evidence violated due process. *See* 1-ER-60-64.

The Washington Court of Appeals first summarized the facts relevant to Trooper Johnson's identification of Jones as the shooter. 1-ER-44-46. The court then discussed the relevant federal law, expressly citing to Supreme Court precedent. 1-ER-61 (citing *Simmons v. United States,* 390 U.S. 377, 383-84 (1968)); 1-ER-63-64 (citing *Brathwaite*, 432 U.S. at 113-114; *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). Applying this federal law to the facts, the Washington Court of Appeals agreed with Jones that the identification procedures "employed by law enforcement in this case were impermissibly suggestive." 1-ER-63. However, the court then reasonably determined that the identification process, albeit suggestive, still possessed sufficient reliability to submit the identification evidence to the jury. 1-ER-63-64 (citing *Brathwaite,* 432 U.S. at 113-14; *Neil,* 409 U.S. at 199-200). The court determined that the defects in the identification went to weight, not admissibility. 1-ER-64.

The Washington Court of Appeals rejected Jones's identification claim, but the state court vacated the conviction for an alleged violation of the right to a public trial. 1-ER-47-56. The prosecution and Jones both sought review by the Washington Supreme Court, which denied Jones's petition for review on the identification claim, but granted the prosecution's petition for review on the public trial claim. 1-ER-42. The Washington Supreme Court reversed the Washington Court of Appeals decision on the public trial claim. *State v. Jones*, 185 Wn.2d 412, 372 P.3d 755 (2016). Finding that no public trial violation had occurred, the Washington Supreme Court reinstated Jones's conviction. *Id*.

Jones then filed a personal restraint petition, challenging the conviction on grounds unrelated to this appeal. The Washington Court of Appeals denied the state court collateral challenge, and the Washington Supreme Court denied review. Jones then filed his current habeas corpus petition.

## C. The District Court Denied Habeas Relief Because Jones Did Not Show the State Court Adjudication of the Claim was Unreasonable

When Jones filed his federal petition, the State filed an answer, asserting that 28 U.S.C. § 2254(d) barred relief because the state court adjudication of the claim was not an unreasonable application of clearly established federal law and did not rest upon an unreasonable determination of the facts. The Honorable David W. Christel, United States Magistrate Judge, issued a Report and

Recommendation, recommending that the district court deny relief. 1-ER-13-41. The magistrate judge determined that the state court did not unreasonably apply clearly established federal law in adjudicating the merits of the identification claim. 1-ER-19-28. The magistrate judge concluded that the state courts, "relying on Supreme Court precedent, reasonably considered the relevant factors and reached the conclusion that Trooper Johnson's eyewitness identification was not so unreliable as to create a substantial likelihood of irreparable misidentification and that this was a matter for the jury to consider regarding the evidence's weight, not admissibility." 1-ER-27-28.

Jones objected to the Report and Recommendation. The Honorable Barbara J. Rothstein, United States District Judge, rejected the objections and denied the petition. 1-ER-3-12. In doing so, the judge expressly rejected Jones's identification claim. 1-ER-6-8. Rejecting Jones's challenge to the state court's factual and legal determinations, the judge concluded that the Washington Court of Appeals did not unreasonably adjudicate the claim. 1-ER-6-8. The district court denied a certificate of appealability. 1-ER-12.

This Court granted a limited certificate of appealability on "the following issue: whether the trial court violated appellant's right to due process by admitting Trooper Johnson's identification of appellant." Dkt. # 6.1, at 1.

## IV.   STANDARD OF REVIEW

The Court reviews *de novo* the district court's decision to deny a habeas corpus petition. *Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000). The Court reviews the district court's findings of fact for clear error. *Hendricks v. Calderon*, 70 F.3d 1032, 1037 (9th Cir. 1995). The state court factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The state court's determination of state law is binding on the federal courts. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## V.   SUMMARY OF THE ARGUMENT

Jones appeals from the denial of habeas relief, claiming that the admission of Trooper Johnson's identification of Jones violated the right to due process. The state courts adjudicated the merits of the claim and reasonably determined that the trial judge properly admitted the identification evidence because the evidence was sufficiently reliable for the jury to consider the weight of the evidence. The district court correctly denied relief under the deferential standard imposed under 28 U.S.C. § 2254(d) because Jones did not show the state court adjudication was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, or that the decision rested upon an unreasonable determination of the facts.

Contrary to Jones's arguments on appeal, both the trial judge and the Washington Court of Appeals applied the factors established by the Supreme Court to review the admissibility of identification evidence. Under clearly established federal law, a judge must screen the identification evidence for reliability and must exclude the evidence only if it presents a substantial likelihood of irreparable misidentification. The courts apply a five factor test to determine reliability. Absent a showing of unreliability, the state court properly admits the evidence even though the identification process may have been impermissibly suggestive. In other words, if the judge finds sufficient indicia of reliability, the court admits the evidence and the jury determines what weight if any to give such evidence.

Here, both the trial judge and the Washington Court of Appeals applied the five factors established by Supreme Court precedent. Applying this law to the stipulated facts, the state courts agreed with Jones that the identification procedures were impermissibly suggestive, but the state courts reasonably determined that the identification, albeit suggestive, still possessed sufficient reliability for admission.

Jones does not show the state court adjudication was unreasonable. Consequently, 28 U.S.C. § 2254(d) bars relief.

# VI.    ARGUMENT

**A.    28 U.S.C. § 2254(d) Bars Relief Because the State Court Adjudication Was Not an Unreasonable Application of Clearly Established Federal law, or Based upon an Unreasonable Determination of the Facts**

28 U.S.C. § 2254(d) expressly limits the power of the Court to grant habeas relief to prisoners confined under a state court judgment and sentence. *Harrington v. Richter*, 562 U.S. 86, 97 (2011). The Court may no longer grant relief simply because the Court concludes in its independent judgment that a constitutional error occurred. *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Instead, the statute creates "an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007).

Under 28 U.S.C. § 2254(d)(1), the federal courts may now grant habeas corpus relief only if the state court adjudication of the claim "'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting 28 U.S.C. § 2254(d)(1)). Congress imposed this deferential standard of review to reform federal habeas corpus review and "'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*,

529 U.S. 420, 436 (2000)). The high statutory burden necessary to obtain relief "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

Under its developing case law over the course of the 20th Century, the Supreme Court had expanded the scope of the writ from a limited inquiry into the jurisdiction of the state court to a full *de novo* review of the federal claims. *Kuhlmann v. Wilson*, 477 U.S. 436, 446 (1986) (summarizing history of the writ); *Wainwright v. Sykes*, 433 U.S. 72, 79 (1977) (same). Under this *de novo* review, a federal court would not defer at all to the state court decision, but would instead exercise independent judgment to decide questions of law and mixed questions of law and fact. *Sykes*, 433 U.S. at 78; *Williams*, 529 U.S. at 400. While the federal court could "give great weight to the considered conclusions of a coequal state judiciary," the court owed no deference to the state court, and the federal court was not bound by the state court's conclusions on questions of federal law. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). The state court's decision on the claim was simply "due the same respect as any other 'persuasive, well-reasoned authority.'" *Williams*, 529 U.S. at 402.

Congress enacted 28 U.S.C. § 2254 specifically to implement habeas reform by constraining this expansive *de novo* review that developed over the 20th Century. *Garceau*, 538 U.S. at 206. Congress recognized that "'[f]ederal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'" *Harrington*, 562 U.S. at 103 (quoting *Calderon v. Thompson*, 523 U.S. 538, 555-56 (1998) (internal quotation marks omitted)). Congress specifically enacted the habeas statute to protect the finality of state court judgments, and to further the principles of comity and federalism. *Garceau*, 538 U.S. at 206. Under the statute, the Court may grant relief only if the state court adjudication of the claim was an unreasonable application of clearly established federal law. *Sarausad*, 555 U.S. at 190; *see also Holland v. Jackson*, 542 U.S. 649, 652 (2004).

"Clearly established federal law" limits review to the holdings of Supreme Court's decisions in existence at the time of the state court adjudication. *Williams*, 529 U.S. at 411-12; *Greene v. Fisher,* 565 U.S. 34, 38-40 (2011). To be "contrary to" such a holding, the state court must arrive "at a conclusion opposite to that reached by this Court on a question of law," or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 405.

To be "contrary to" clearly established federal law, the state court decision "must be substantially different from the relevant precedent of this Court." *Williams*, 529 U.S. at 405. Where the challenge is to the manner in which the state court applied federal law, the case does not fall within the "contrary to" clause. *Id*. at 407. Rather, the case more appropriately falls under the "unreasonable application clause" of 28 U.S.C. § 2254(d).

The "unreasonable application" clause of 28 U.S.C. § 2254(d) imposes a substantially high burden to obtain relief. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The pivotal question under the "unreasonable application clause" is the reasonableness of the state court's decision, not whether the state court reached the correct conclusion when adjudicating the particular claim. *Harrington*, 562 U.S. at 101; *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Whether the state court decision was unreasonable depends in great part upon the specificity of the rule at issue because "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101.

Under this standard, the petitioner bears the heavy burden of showing "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98. "If this standard is difficult to meet, that is because it was meant to be." *Id*. at 102. The statute "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Readiness to find reversible constitutional error is inconsistent with this deferential standard. *Id.*; *Brown v. Payton*, 544 U.S. 133, 141-47 (2005).

**B.    The State Court Reasonably Applied Clearly Established Federal Law When It Concluded that the Identification Evidence was Sufficiently Reliable to Admit at Trial**

Jones acknowledges that 28 U.S.C. § 2254(d) imposes a deferential standard of review, and he cites to the relevant clearly established federal law, but Jones then fails to give the proper deference to the state court adjudication. Contending that the state court "paid little more than lip-service" to the Supreme Court precedent, *see* Brief, at 20, Jones then essentially mischaracterizes the factual and legal analysis conducted by the state courts regarding his claim. Applying the proper deference required by 28 U.S.C. § 2254(d), Jones does not show the state court adjudication was an unreasonable application of clearly established federal law. The district court therefore correctly denied habeas corpus relief in this case.

**1.  Identification Evidence Must Present a Substantial Likelihood of Irreparable Misidentification to Violate Due Process**

Identification evidence is not excludable absent improper police action. "When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at post indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Perry v. New Hampshire*, 565 U.S. 228, 233 (2012).

Where the defendant challenges the identification evidence, the judge must screen the evidence for reliability and must exclude the evidence only if it presents "'a very substantial likelihood of irreparable misidentification....'" *Perry*, 565 U.S. at 232 (quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)). If the judge finds sufficient indicia of reliability, "the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." *Perry*, 565 U.S. at 232. "The Constitution, our decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Id.* at 237.

Thus, to prevail on the claim, Jones must show that the identification process "was so unnecessarily suggestive and conductive to irreparable mistaken identification that he was denied due process of law." *Neil v. Biggers*, 409 U.S. 188, 196 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). Whether the identification was unduly suggestive "must be determined 'on the totality of the circumstances.'" *Neil*, 409 U.S. at 196. Absent a showing of unreliability, the state court properly admits the evidence even though the identification process may have been impermissibly suggestive. *Id*. at 199; *Manson v. Brathwaite*, 432 U.S. 98, 114-17 (1977).

> **2.      The State Court Reasonably Determined that the Identification Process, Albeit Suggestive, Was Sufficiently Reliable to Submit the Evidence to the Jury**

The Washington Court of Appeals adjudicated this claim on direct appeal. 1-ER-60-64. The court first summarized the facts relevant to Trooper Johnson's identification of Jones as the shooter. 1-ER-44-46. Notably, the court did not have to resolve any disputed facts because the parties had stipulated to the facts. 2-ER-89-97 (stipulated facts); 2-ER-100 (defense counsel admitting agreement). Although Jones argues at length about the lack of any credibility determinations by the state courts, *see, e.g.,* Brief, at 23-25, this argument is a red herring. No credibility determinations were needed given the stipulated facts.

The Washington Court of Appeals then discussed the relevant federal law, expressly citing the relevant Supreme Court precedent. 1-ER-61 (citing *Simmons*, 390 U.S. at 383-84); 1-ER-63-64 (citing *Neil*, 409 U.S. at 199-200; *Brathwaite*, 432 U.S. at 113-114). Applying this law to the stipulated facts, the state court agreed with Jones that the identification procedures "employed by law enforcement in this case were impermissibly suggestive." 1-ER-63. However, the state court then reasonably determined that the identification, albeit suggestive, still possessed sufficient reliability. 1-ER-63-64.

In reaching this conclusion, the state court set forth the correct legal standard that "the reliability of the identification, considering the totality of the circumstances, controls the determination of whether the procedures created a substantial likelihood of irreparable misidentification." 1-ER-63 (citing *Brathwaite,* 432 U.S. at 113-14; *Neil,* 409 U.S. at 199-200). "In other words, if the identification is reliable, it cures the suggestive nature of the confrontation procedure." 1-ER-63-64. Although Jones now argues that the state courts "paid little more than lip service" to the factors established by the Supreme Court, *see* Brief, at 20, the state court opinion shows that both the trial judge and the appellate court dutifully considered and applied these factors in this case. The state appellate court ruled:

20

The United States Supreme Court has provided several factors to determine the identification's reliability, "includ[ing] the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Brathwaite,* 432 U.S. at 114; *Biggers,* 409 U.S. at 199-200. Based on the facts presented in the parties' stipulation, the trial court carefully weighed each of these factors in its order denying Jones's motion to suppress Trooper Johnson's identification. It determined that the there was no substantial likelihood of irreparable misidentification. We hold that the trial court did not abuse its discretion by reaching this determination.

1-ER-64.

Both the Washington Court of Appeals and the trial judge correctly considered the proper factors and determined that defects in the identification went to the weight, not admissibility of the evidence. 1-ER-64. The state court reasonably concluded that the jury was best suited to determine what weight to give the identification evidence. 1-ER-64 (citing *Brathwaite*, 432 U.S. at 116). The state court reasonably adjudicated the claim.

### 3. Jones Does Not Show the State Court Unreasonably Applied Clearly Established Federal Law

Jones argues at length the state courts did not actually evaluate the factors established by the Supreme Court, and he argues that the Washington Court of Appeals simply deferred to the trial judge on this issue. Brief, at 20-31. This argument fails to give proper deference to the state court.

To constitute a reasonable application of clearly established federal law, the habeas statute "does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original). The statute requires only a "decision" by the court, not a treatise on the law and facts that fully explains all the subtleties of the court's analysis. *Harrington*, 562 U.S. at 98-99. The Court made clear that the state court decision satisfies the statute where the state court reasonably considered and rejected the federal claim on the merits "'after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments.'" *Johnson v. Williams,* 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009) (emphasis added by Court)).

Here, the state court expressly cited the relevant clearly established federal law, but even without such citation, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. This strong presumption "may be rebutted only in unusual circumstances. . . ." *Johnson v. Williams*, 568 U.S. 289, 302 (2013). Jones fails to rebut that presumption because the state court analyzed the federal claim.

Jones fails to give proper deference to the state court adjudication by essentially focusing on isolated sentences in the opinion rather than viewing the decision as a whole. *See Holland v. Jackson*, 542 U.S. 649, 655 (2004) (petitioner improperly focused on isolated sentences in the state court opinion to argue that the state court did not apply the proper federal law standard). Here, the Washington courts expressly cited to the Supreme Court precedent that clearly established the relevant federal law, expressly recited the proper standards for evaluating the alleged error under that Supreme Court precedent, and expressly ruled that the judge did not err in admitting the evidence because the evidence was sufficiently reliable. Jones's argument that the state appellate court abdicated its role of evaluating the claim fails to give proper deference to the state court decision. Contrary to Jones's argument, the Washington Court of Appeals did not effectively "rubber stamped" the trial judge's ruling. Rather, the state court opinion viewed as a whole shows the state appellate court properly analyzed the claim in light of the facts and the applicable law.

The Supreme Court has established a two-part standard for determining whether due process requires suppression of eyewitness identification evidence. *Neil*, 409 U.S. at 197-98; *Brathwaite*, 432 U.S. at 99. The first part of the standard asks whether the identification process was impermissibly suggestive,

and the second part asks whether the unduly suggestive procedures give rise to a substantial likelihood of misidentification. *Neil,* 409 U.S. at 199; *Brathwaite*, 432 U.S. at 114-17. Absent a showing of unreliability, the state court properly admits the evidence even though the identification process may have been impermissibly suggestive. *Neil*, 409 U.S. at 199-201; *Brathwaite*, 432 U.S. at 114 ("reliability is the linchpin in determining the admissibility of identification testimony. . . ."). That is exactly the two-part standard applied by the Washington Court of Appeals in this case.

As to the first part of the standard, the state court expressly cited *Simmons*, considered the relevant factors in light of the stipulated facts, and determined that the identification process was unduly suggestive. 1-ER-61-62 (citing *Simmons*, 390 U.S. at 383-84). The Washington Court of Appeals noted that Trooper Johnson's statements about "how well he saw the man who shot him" were "at best inconsistent." 1-ER-62. The Washington Court of Appeals also discussed the various photographs and photomontages shown to Trooper Johnson. 1-ER-62. The Washington Court of Appeals noted that Trooper Johnson said "he could not be '100% sure'" that one single photograph "was the shooter, but indicated that the photograph resembled the shooter." 1-ER-62. The court also noted that when shown other photomontages that did not include

Jones, Trooper Johnson did not identify any person as the shooter. 1-ER-62. The state court noted that Trooper Johnson had the name "Marty" written on his hand, and that Trooper Johnson twice asked to see a photograph of Susan Jones's husband. 1-ER-62. The state court also noted that when shown Jones's photograph, first as a single photograph and later as part of a photomontage, Trooper Johnson identified Jones as the shooter. 1-ER-62-63.

Applying the first part of the standard, the Washington Court of Appeals reasonably determined that because Trooper Johnson repeatedly requested to see photos of Susan Jones's husband, was shown several single photos of Jones, and made inconsistent statements about his ability to recognize the shooter, the identification process was unduly suggestive. 1-ER-63. Applying the second part of the standard, including the same totality of circumstances referenced by the court in the first part of the standard, the court then determined that the identification procedures, although suggestive, did not create a substantial likelihood of misidentification. 1-ER-63-64. Jones does not show that the state court unreasonably applied federal law when adjudicating this claim. The court reasonably determined that the judge properly admitted the evidence and allowed Jones to challenge the weight of the evidence before the jury. Since the state court decision was not unreasonable, Jones cannot obtain relief.

Jones faults the Washington Court of Appeals for not extensively evaluating each fact in determining whether the identification process was sufficiently reliable to warrant admission of the evidence. However, The Court's role consists of evaluating the reasonableness of the state court decision, "not grading their papers." *Cruz v. Miller,* 255 F.3d 77, 86 (2nd Cir. 2001). "In order to merit AEDPA deference the state court need not expressly identify the relevant Supreme Court precedent, nor make a perfect statement of the applicable rule of law, nor provide a detailed opinion covering each aspect of the petitioner's argument." *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1333 (11th Cir. 2009). The statute ends the federal courts' "tutelary relation" to the state courts. *Williams v. Roper*, 695 F.3d 825, 834-35 (8th Cir. 2012).

The statute requires only a "decision" by the state court, not a treatise on the law and facts explaining the full reasoning of the state court's decision. *Harrington*, 562 U.S. at 98. "Opinion-writing practices in state courts are influenced by considerations other than avoiding scrutiny by collateral attack in federal court." *Id*. at 99. For this reason, the Supreme Court has warned that "courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell v. Cone*, 543 U.S. 447, 455 (2005).

In *Johnson v. Williams*, 568 U.S. at 297, the circuit court declined to apply the deferential standards of the habeas statute after concluding that the state court did not actually adjudicate the particular claim. The circuit court reached this conclusion because the state court opinion did not explicitly set forth the state court's reasoning on the federal claim. *Id*. Reversing, the Supreme Court explained, "it is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference. On the contrary, there are several situations in which state courts frequently take a different course." *Id*. at 298. The Court recognized various reasons exist why a state court may not fully articulate the reasoning underlying the decision on a particular claim or on a specific issue within a claim. *Id.* at 298-300.

Jones's "readiness to attribute error" to the state court decision because the state court did not fully discuss how his proposed evidence might affect various aspects of a defense "is inconsistent with the presumption that state courts know and follow the law." *Visciotti*, 537 U.S. at 24. Contrary to Jones's argument, no Supreme Court holding required the state court to make particular reference to how each fact affected the reliability of the identification evidence. *See Brown*, 551 U.S. at 17 (state appellate court was not required to make a particular reference to the excusal of each juror.).

27

To the extent Jones "claims relief is warranted because the state habeas court engaged in little analysis and summarily found no prejudice, the argument is without merit." *Bishop v. Warden*, 726 F.3d 1243, 1255 (11th Cir. 2013). As the Eleventh Circuit explained, "'[t]elling state courts when and how to write opinions to accompany their decisions is no way to promote comity' and '[r]equiring state courts to put forward rationales for their decisions so that federal courts can examine their thinking smacks of a "grading papers" approach that is outmoded in the post-AEDPA era.'" *Id*. (citing *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.1997)). Jones's argument is "incompatible" with the highly deferential standard that "demands that state-court decisions be given the benefit of the doubt." *Visciotti*, 537 U.S. at 24.

The fact that the Washington Court of Appeals may not have individually discussed each particular fact in determining that the identification evidence was reliable and in finding that the trial court did not abuse its discretion in admitting the evidence is not a basis for avoiding the habeas statute. Rather, the state court opinion as a whole shows the Washington Court of Appeals applied the relevant federal law to the facts of the case and reasonably determined the admission of the evidence did not violate due process. Simply put, the state court reasonably adjudicated the claim, and 28 U.S.C. § 2254(d) bars relief.

28

### C. Jones Does Not Show the State Court Adjudication Rested on an Unreasonable Determination of the Facts

Jones also contends the state court adjudication rested on an unreasonable determination of the facts. Under 28 U.S.C. § 2254(d)(2), the Court may grant relief if the state court adjudication "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." However, like the statute governing the state court's application of clearly established federal law, this part of the habeas statute also "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013).

To challenge the reasonableness of the state court's factual determination, it is not sufficient that reasonable minds might disagree about the correct resolution of the factual issues. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Nor are factual determinations unreasonable simply because this Court would have reached a different conclusion than the one reached by the state courts. *Wood v. Allen,* 558 U.S. 290, 301 (2010); *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015). To be an unreasonable determination of the facts, the evidence must be "too powerful to conclude anything but" the contrary of that reached by the state court. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

Although Jones argues that the state court adjudication rested upon an unreasonable determination of the facts, this assertion is difficult to comprehend because the claim rested upon stipulated facts. The state court did not have to resolve any disputed issue of fact, or make any credibility determinations, because the prosecution and defense agreed to the material facts.

Moreover, Jones actually complains about an alleged legal error by the state court, not a factual error by the state court. Jones contends that the state court treated the issue of reliability as an issue of fact rather than an issue of law, or mixed question of law and fact. However, even assuming that the state court so erred, the alleged error was a legal error, not a factual one.

Under Jones's theory, the state court actually made a legal error by misapplying the legal standard. The correct application of a legal standard is a legal issue, not a factual one. *See, e.g., Rice v. Collins*, 546 U.S. 333, 342 (2006) ("The question whether a state court errs in determining the facts is a different question from whether it errs in applying the law."); *Lopez v. Smith*, 574 U.S. 1, 8 (2014) (disagreement with state court about whether defendant received adequate notice of the charges rested upon a legal determination, not a factual one); *Wood v. Carpenter*, 907 F.3d 1279, 1293 (10th Cir. 2018) (state court decision rejecting a claim that counsel ineffectively prepared expert witness by

not providing all of the defendant's juvenile records was not a determination of a factual issue because the state court determination that records were not relevant evidence was a legal determination, not a factual one); *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1259 (11th Cir. 2012) (seriously doubting without deciding whether the state court determination that evidence was "largely cumulative" of evidence presented at sentencing was a factual determination, since the conclusion was actually a legal one).

Simply put, although Jones points to an alleged legal error; he does not show the state court made an unreasonable determination of the facts. In fact, in the very same argument, Jones admits the state court made no factual determinations. *See* Brief, at 32 (contending the state courts made no factual findings to resolve the claim and made no factual findings entitled to deference). Since Jones does not show the state court made factual findings, he cannot show the state court made an unreasonable determination of the facts.

Jones's argument that the state court somehow unreasonably determined the facts when the case rested upon stipulated facts is an improper attempt to avoid the requirements of 28 U.S.C. § 2254(d). The district court correctly denied habeas relief because the state court adjudicated the claim on the merits, and Jones did not show the state court adjudication was unreasonable.

Finally, Jones argues that the trial judge and the Washington Court of Appeals "seemingly ignored all evidence" and "turned a blind-eye" to the evidence regarding Trooper Johnson's identification of Jones. Brief, at 33. The record directly refutes this argument. Both the trial judge and the Washington Court of Appeals considered all the evidence presented to the state courts.

The prosecutor acknowledged to the trial judge that the case involved "admittedly a suggestive procedure. . . ." 2-ER-121. The prosecutor argued that "the defects in this case with the suggestive identification procedure, those goes [sic] to the weight and not the admissibility of this evidence." 2-ER-121. With the prosecution's concession of a suggestive procedure, the trial judge then applied the five *Brathwaite* factors and found the evidence sufficiently reliable to admit to the jury. 2-ER-122-123. The trial judge reasonably applied clearly established federal law in admitting the evidence.

On appeal, the Washington Court of Appeals agreed that the identification process was impermissibly suggestive. 1-ER-61-62. Contrary to Jones's argument, the Washington Court of Appeals noted Trooper Johnson's inconsistent statements and determined that the circumstances of the identification process "were impermissibly suggestive." 1-ER-62-63. The state courts did not ignore evidence or turn a blind-eye towards the evidence.

Rather, the state courts reasonably determined that, despite the suggestive identification process, the evidence was still sufficiently reliable to go before the jury. 1-ER-63-64. Expressly citing the factors established by the Supreme Court, the Washington Court of Appeals concluded that based upon the stipulated facts, the judge properly admitted the evidence. The state court adjudication was not unreasonable.

## VII. CONCLUSION

For the reasons stated above, the State respectfully asks this Court to affirm the district court's judgment denying the habeas corpus petition.

DATED this 8th day of July 2024.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General

s/ John J. Samson
JOHN J. SAMSON, WSBA #22187
Assistant Attorney General
Corrections Division
P.O. Box 40116
Olympia, WA 98504-0116
(360) 586-1445
John.Samson@atg.wa.gov

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## VIII.  CERTIFICATE OF COMPLIANCE FOR BRIEFS

**9th Cir. Case Number(s)** _23-1655_                     _Jones v. Perkins_


I am the attorney or self-represented party.

**This brief contains 7157 words**, excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and type face comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief:

[X] complies with the word limit of Cir. R. 32-1.


**Signature**   _s/John J. Samson_               **Date**   _7/8/2024_
              John J. Samson, WSBA #22187
              Assistant Attorney General